OPINION AND ORDER

OPENING STATEMENT

This matter raises issues of first impression. Did the Hopi Trial Court exceed its jurisdiction when it imposed a disciplinary order upon a member of the Hopi Bar arising from an ethical complaint? Second, did the Trial Court abuse its discretion when it ordered a six-month suspension for the violation of the ABA Model Rules of Professional Conduct? We accept *221 jurisdiction to hear the extraordinary writ filed in this matter. However, we deny Petitioner’s relief and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts giving rise to this petition for extraordinary writ are as follows. Petitioner, Michael E. Day, is a lay advocate. He has been admitted to practice before the Hopi Tribal Court since 1982. On May 29, 2003, Judge Delfred Leslie filed a complaint against Petitioner for violating Ethical Rules (ER) of the American Bar Association’s (ABA) Model Rules of Professional Conduct (MRPC). Specifically, he asserted that Petitioner violated sections ER 1.7 (Conflict of Interest), ER 1.16 (Declining and Terminating Representation Once a Conflict Becomes Apparent), and ER 8.4 (Prohibiting Attorney Misconduct). The complaint alleged that Petitioner’s professional misconduct arose from his simultaneous legal representation of Anthony Tewawina (Tewawina) in a divorce action and Rainy Naha and Rodrick Pongyesva (“Maternal Grandparents”) in a Minor-In-Need-of-Care (MNC) action.[1] Id. at 1.
The Chief Judge of the Hopi Trial Court provided Petitioner with notice of the complaint on June 23, 2003. In response to the notice, Petitioner requested a complete record of the Tewawina and MNC actions on July 7, 2003. On November 7, 2003 the Chief Judge provided Petitioner with notice of a disciplinary hearing based upon the complaint. The Chief Judge granted Petitioner permission to access the records of the divorce and MNC cases at the courthouse. The disciplinary hearing was held on December 5, 2003 before the Chief Judge where Petitioner appeared pro se. At the hearing, the Petitioner provided sworn testimony in response to and in defense of the complaint,. On December 29, 2003, the Chief Judge entered an order finding Petitioner in violation of ER 1.7, 1.16, and 8.4. Petitioner’s Exhibit 1(PE) at 7. The order suspended Petitioner from the practice of law for six months beginning January 1, 2004 and imposed court costs of $25.00 due payable on January 19, 2004. Id. The order permits Petitioner’s reinstatement to the practice of law on July 1, 2004 provided that he complete the Arizona State Bar Course of Professionalism. Id. On January 23, 2004, Petitioner filed a Request to Stay Suspension Order Dated December 29, 2003 with the Hopi Appellate Court along with the Petition for Extraordinary Writ.
The Chief Judge made the following findings of facts in its December 29, 2003 Order:
— January 24, 2002: Mr. Day files a petition for dissolution of marriage on behalf of Tewawina, including petitioning the court for Tewawina’s physical custody of three minor children. Id. at 2.
— August 26, 2002: The Hopi Tribe files a MNC petition against Te-wawina’s ex-wife/mother of the three children. Id.
— October 23, 2002: Hopi Social Services (HSS) places the children into the physical custody of Tewawina prior to the October 30 disposition hearing. Id.
— November 18, 2002: The court grants Tewaurina’s motion for default judgment in the divorce action and files an entry of default, entitling him to custody of the children. *222 A default judgment hearing is set for March 14, 2003 to enter final rulings. (November 21: Tewawina moves to San Carlos, AZ with the children.) Id. at 2-3.
— December 4, 2002: Mr. Day files an entry of appearance and motion to intervene on behalf of the Maternal Grandparents of the children, in the MNC action, and moves the Children’s Court to order Tewawina (as custodial parent) to permit the grandparents visitation with the children. Petitioner does not inform Tewawina prior to the motion to intervene that he is representing the grandparents, nor does Tewawi-na consent to his representation of them in the MNC action. Id. at 3.
— January 29, 2003: Mr. Day files a motion far order to show cause, in the MNC action on behalf of the grandparents to have HSS held in contempt for improperly placing physical custody of the children with Tewawina and requests the court to place the children in the physical custody of the grandparents. Mr. Day does not inform Te-wawina nor get his consent to this motion. Id. at 4.
— January 30, 2003: Hopi Presenting Officer moves to disqualify Mr. Day on the grounds of conflict of interest at the status review hearing for the MNC action, and Mr. Day moves to withdraw as counsel far the grandparents. Id,
— February 28, 2003: Mr. Day moves to withdraw as counsel for Tewawi-na in the divorce action. Id.
— March 1.4, 2003: Tewawina represents himself at the final divorce hearing due to Mr. Day’s withdrawal as counsel. Id. at 5.
— Various dates: The grandparents represent themselves at status review hearings in the MNC action due to Mr. Day’s withdrawal as counsel. Id.
Based on these facts, the Court found that Petitioner violated the ethical rules against conflicts of interest, declining and terminating representation when a conflict becomes apparent, and attorney misconduct. Id. at 6-7. The Court relied on sections 1.8.1(e) and 1.9.1(c) in Hopi Tribal Ordinance (HTO) 21 for the authority to regulate the conduct of attorneys and lay advocates, specifically to suspend Petitioner from practice and assess court costs. Id. at 1.
Petitioner seeks review of the Trial Court’s December 29, 2003 order in the form of an extraordinary writ pursuant to Rule 35(a) of the Hopi Indian Rules of Civil and Criminal Procedure (HIRCCP) rather than an appeal from a final order. Specifically, Petitioner requests the following relief: stay the December 29, 2003 suspension order, dismiss the disciplinary action, order the Chief Judge of the Trial Court to vacate his December 29, 2003 order, reinstate Petitioner to the practice of law; and order the Chief Judge of the Trial Court to cease and desist from investigating, prosecuting, and taking any disciplinary action against any member of the Hopi Bar until rules and procedures for ethical complaints have been adopted pursuant to HTO 21, § 1.8.3.
This matter was initially heard on March 10, 2004 by Writs Judge of the Hopi Appellate Court, the Honorable Patricia Sekaquaptewa, Judge Pro Tem.[2] *223 Upon Petitioner’s motion, the matter was continued. Petitioner subsequently requested the Writs Judge to stay the Trial Court’s suspension order and remove the public notices regarding his suspension on the grounds that his suspension posed a hardship to his clients and that he had already served two months of the six-month suspension. The Writs Judge granted Petitioner’s request to stay the suspension order and remove the public notices until such time of the next hearing.[3] The Writs Judge also ordered the Chief Judge to answer 48 hours prior to the next set hearing date and Petitioner’s response due 24 hours after the Chief Judge’s answer was filed.[4] The Court permitted both parties to file their pleadings electronically or by facsimile and instructed the Court Clerk to timestamp such filings according to the date and time of receipt of the e-mail or fax. Oral arguments were held on March 18, 2004 before the Honorable Patricia Sekaquaptewa. The Court granted the Chief Judge’s request for full panel review of the petition. The Court issued an order staying Petitioner’s suspension until April 9, 2004 to allow review by the entire Appellate Court.

ISSUES PRESENTED ON APPEAL

This Court must decide: (1) whether the Hopi Trial Court exceeded its jurisdiction when it imposed a disciplinary order upon a member of the Hopi Bar arising from an ethical complaint and (2) whether the Trial Court abused its discretion when it ordered a six-month suspension for the violation of the ABA Model Rules of Professional Conduct.
The Hopi Appellate Court reviews questions of law de novo and accepts findings of facts made by the trial courts unless they are clearly erroneous. Randolph v. Hopi Tribe, 96AC00006 (1997) at 4; H.I.R.C.C.P. 37(h); see also Coin v. Mowa, AP-005-95 (1997) at 3.

DISCUSSION

I. Petition fob Extraordinary Writ Granted
This Court accepts jurisdiction to review the petition for extraordinary writ because it involves an important issue of public concern and as there is no other plain, speedy and adequate remedy available to the Petitioner. HTO 21, § 1.2.6; Queryavema v. Hopi Tribal Court, 02AP000001, 4 Am. Tribal Law 415, 417-18, 2002 WL 34463046 at *1 (2002).
A. No Plain, Speedy and Adequate Remedy Available
Petitioner argues he has no appeal rights available to test the disciplinary decision because the Trial Court acts as the investigator, prosecutor and judge and that there is no independent body to review the Trial Court’s order. The Chief Judge argues Petitioner could have availed himself of the appeals process and requested stay relief pending appeal, but Petition *224 er failed to do so and instead resorted to the writs process.
Rule 37 of the HIRCCP provides as a matter of right that “any party who is aggrieved by any final order, commitment or judgment of the trial court may appeal” within twenty days from the entry of judgment. A final order or judgment is a decision based on the merits of the action that ends the matter and “leaves nothing for the trial court to do but to execute the judgment or which leaves no question open for any further judicial action.” Honie v. Hopi Tribal Housing Authority, 96AP000007, 1 Am. Tribal Law 346, 348-49, 1998 WL 35281675 at *1 (1998); see Harris v. Hopi Tribe, 01AC000008, 3 Am. Tribal Law 428, 429-30, 2001 WL 36175991 at *1 (2001). The Trial Court’s order suspending Petitioner was final because it was based on the merits of the ethical complaint and left nothing for the court to do but execute it. HIRCCP 37(b) gives aggrieved parties the right to appeal from “any” final order or judgment of the trial court; it is not limited to only civil or criminal orders and judgments. Therefore, we find disciplinary orders of the Trial Court appealable final orders.
Notwithstanding this right to direct appeal, other jurisdictions have recognized extraordinary circumstances where writ review may be necessary because the appellate process would be inadequate or because the issues must be resolved promptly and are of great public importance. Continuing Education of the Bar, California Civil Writ Practice § 3.14 (3d ed). Such circumstances apply here. It is well-established Hopi law7 that “when a case involves an issue of great public concern and no other plain, speedy and adequate remedy appears to exist for review of the trial court’s action, the Appellate Court may grant review7 via a petition for extraordinary writ.” Quoyavema, at 4 Am. Txibal Law at 415, at 417-18, 2002 WL 34463046 at *1. Federal courts have heard petitions for extraordinary writ when an issue is of great and possibly recurring importance, but which has yet to be addressed by an appellate court. Federal Appeals Jurisdiction and Practice § 3.5 (3d ed.). Resolving this important issue through a petition for writ will provide guidance to the low7er courts. Id.
This is an issue of first impression. Given the far reach of lay counsel to the Hopi public, this issue directly affects the policy regarding quality of legal representation as well as the broader policy of equal access to the law. It will be of recurring importance because until rules for disciplinary proceedings are set out or a formal bar association is established, the Trial Courts are the only forum to hear complaints against advocates who allegedly do not comport themselves to the standards of the ABA.[5] This issue has yet to be fully addressed by the Appellate Court since earlier cases primarily involved review of the discipline of lay counsel in the contempt context only.[6] Therefore, we find it appropriate to accept jurisdiction to review this petition for extraordinary writ.
We are further persuaded to accept jurisdiction as appellate review of a disciplinary order is arguably not a speedy remedy given that the Appellate Court generally convenes only three times a year *225 (April, August, November). Circumstances may arise, as in this case, where a practitioner serves most if not all of the suspension order before his appeal is heard.[7] A petitioner under these circumstances could request a stay of the order pending appeal from the trial court per HIRCCP 37(f) (“a stay shall be granted in all cases ... unless manifest injustice would result therefrom”).[8] However, it would be burdensome on a petitioner to show that “manifest injustice” would not result from a grant of stay from the same Trial Court judge who issued the disciplinary order. The infrequency of the Appellate Court’s sessions and the high burden on Petitioner to show no manifest injustice resulting from the grant of stays render the appeals process in this instance a hallow option for review of the suspension order.
B. The Appellate Process is Inadequate in This Instance Only Because it is Coupled With the Unresolved Issue of Rules for Disciplinary Proceedings Against Hopi Bar Members
Hopi Tribal Ordinance 21, § 1.8.1 provides the Chief Judge concurrent authority to establish rules of conduct of Hopi Bar members. Indeed, the Chief Judge is better suited to develop rules, committees and disciplinary proceedings as he is the chief administrator of the Hopi Tribal Court. See Hopi Resolution H-14-96. We believe that once rules for disciplinary proceedings are adopted, future petitioners may find they have access to appellate review pursuant to our current rules.
C. The Specific Grounds for Granting Extraordinary Writ
Petitioner argues that this Court should grant extraordinary writ relief on the grounds that 1) the Chief Judge usurped, intruded into and unlawfully exercised his role as Chief Judge of the Trial Court by suspending petitioner (HIRCCP 35(a)(1)); 2) that Petitioner is denied admission to the use and enjoyment of his right to practice law and seeks to compel the Chief Judge from prohibiting petitioner from practicing law (HIRCCP 35(a)(3)); and 3) the Chief Judge is exercising his judicial and ministerial duties by taking disciplinary action against a Hopi Bar member in excess of the Trial Court’s jurisdiction (HIRCCP 35(a)(4)). We find no basis in granting the petition on these grounds.
The only ground raised by the Petitioner is whether the Trial Court exceeded its jurisdiction. See HIRCCP 35(a)(2); HTO 21, § 1.2.6. HIRCCP 35(a)(2) is the functional equivalent of a writ of certiorari.[9] We turn to other jurisdictions to help explain the substantive requirements for this section. Hopi Resolution H-12-76; Hopi Tribe v. Mahkewa, AP-002-02 (1995) at 2. HIRCCP 35(a)(2) provides: “an extraordinary writ ... may be granted ... where an inferior tribunal, board or officer exercising judicial functions has exceeded its jurisdiction or abused it discretion.” This provision sets forth the same requirements as Arizona and California for ob- *226 taming a writ of certiorari:[10] a) the act is judicial in nature, b) the act has been completed and c) the lower court exceeded its jurisdiction or abused its discretion. The Hopi rule differs significantly from these jurisdictions because it does not specify that there be no right of appeal. Even if the rale required no right of appeal, Petitioner’s case falls under an exception because an appeal does not provide a speedy and adequate remedy and here the appeal was arguably lost through no fault of the Petitioner because there are no rules governing discipline proceedings. Petitioner easily satisfies the other requirements in asserting that: a) the suspension order arose from the Trial Court’s exercise of a judicial function, hearing and deciding an ethical complaint; b) the Trial Court’s act has been completed; and c) the Trial Court exceeded its jurisdiction since it lacks the authority to discipline Hopi Bar members. Petitioner’s assertion that the Chief Judge lacks the authority to discipline Hopi Bar members is the gravamen of Petitioner’s writ application and is not persuasive.
II. Tribal Court Authority to Regulate and Discipline Members of the Hopi Bar
A. Hopi Tribal Ordinance 21 Provides the Authority to Discipline Bar Members
It is well established that Hopi Tribal Courts have the authority to regulate and discipline members of the Hopi Bar. Sekayumptewa II, at 2. Hopi Tribal Ordinance 21 and our prior case law make it clear that the Tribal Court’s authority to discipline members of the Bar is not limited to certain types of proceedings. Id. Rather, this Court unequivocally declared that “so long as the Trial Court’s discipline is reasonable and appropriate to restore the conduct of its officers to the furtherance of justice, it is within its power as defined in HTO 21.” Id, Petitioner ignores these holdings and instead attempts to deconstruct Hopi law. In particular, Petitioner contends that the Trial Court lacks jurisdiction over ethical complaints under HTO 21, § 1.7.1, that ethical complaints are administrative in nature and bar members are not ministerial officers as used in HTO 21, § 1.8.1. Thus, he concludes Bar members are not subject to the court’s regulation authority. He interprets the holding of Sekayumptewa as the limited proposition that attorneys and lay counsel are subject to the same legal standard in contempt proceedings.
Petitioner’s arguments are unpersuasive. Sekayumptewa I and II establish legal precedent far broader than what Petitioner claims. Namely, Sekayumptewa I recognized the longstanding practice of lay advocacy and established that lay advocates are members of the bar, as are attorneys. (1997) at 7. While the sanction in that case was imposed in the contempt context, the Court’s equal treatment of lay advocates and attorneys as bar members meant that any punishment, not just contempt, applies equally to both groups. Id, Sekayumptewa II serves as even stronger controlling authority. It established that HTO 21, § 1.8.1(e)[11] and § 1.9.1(c)[12] pro *227 vide courts the authority to regulate and implicitly to discipline members of the bar. Sekayumptewa II, at 2. Further, it set forth a minimum standard of discipline Trial Courts could impose, that is discipline which is “reasonable and appropriate to restore the conduct of its officers.” Id.
Furthermore, Petitioner’s argument overlooks the important fact that the Trial Court has the inherent power unless restricted by constitution or statute to discipline bar members who engage in ethical misconduct. HTO 21, § 1.8.1; 7 Am.Jur.2d Arm § 34. Courts having the authority to admit advocates to the practice of law also possess this inherent power. Id. There are no constitutional or statutory provisions restricting the Trial Court’s power in this regard. On the contrary the Hopi Constitution vested judicial power in the Tribal Council who in turn delegated it to the Tribal Courts through HTO 21, § 1.1.1. Therefore, the Trial Court has the authority to regulate the practice of law and accordingly to admit and discipline its bar members.
The Trial Court’s authority to discipline bar members is the universally accepted premise that the practice of law is a matter exclusively within the authority of the judiciary. In the Matter of Shannon, 179 Ariz. 52, 876 P.2d 548, 571 (Ariz.1994). For example in California, “prior to the State Bar Act, discipline was administered by the courts under their inherent judicial power. The State Bar Act did not attempt to curtail or limit the previously existing, judicial power ... However, the elaborate scheme of disciplinary procedure set up in the State Bar Act has rendered the court proceedings unnecessary.” 1 Witkin Cal. Proc. Attys § 616 (4th ed.). A corollary to this premise is that in the absence of an express grant of the power to regulate the practice of law to any of the branches of government, the branch to which it naturally and logically belongs must exercise the power. Shannon, 876 P.2d at 572. That branch is the judiciary because the practice of law is so intimately connected and bound to the exercise of judicial power where attorneys are officers of court whose duties relate almost exclusively to proceedings of a judicial nature. Id.
Petitioner also contends that ethical complaints are not judicial proceedings and that attorneys are not ministerial officers, and therefore, Petitioner is immune from HTO 21, § 1.8.1. While some jurisdictions, in fact, regard disciplinary proceedings as administrative in nature, most regard’ them as judicial, either civil, quasi-criminal or sui generis.[13] 7 Am.Jur,2d At-tys § 103. Regardless of the nature of the proceedings, the weight of authority both Hopi and foreign makes clear that courts have the power to regulate the practice of law. Incident to this power is the authority to admit and discipline. The main source of this power for Hopi courts is the delegation of judicial power within Hopi Tribal Ordinance 21 itself.
Petitioner’s reliance on HTO 21, § 1.8.3 to support his argument that disciplinary orders are valid only in the issuing court is misguided. The plain language of the provision distinguishes the roles of the Trial Court from the Appellate Court in enacting rules of court. Nothing in the statute remotely suggests that the Trial Court has no authority to control officers of the Appellate Court, and vice versa. HTO 21, § 1.9.1 includes attorneys as officers of the Hopi Tribal Courts; there is no such distinction between officers of the Trial Court and officers of the Appellate Court. Fur *228 ther, the logical extension of Petitioner’s interpretation would wreak havoc on the judicial system since any order of the Appellate Court would have no effect on the Trial Court, and vice versa.
Finally, Petitioner urges this Court to hold that the power to regulate members of the Hopi Bar is limited to controlling their conduct in court and does not include the power to decide ethical complaints. In other words, Petitioner’s analysis of Hopi law effectively strips the courts of their* power under HTO 21. If the power to regulate did not include the power to hear* ethical complaints, then the Courts’ regulatory authority would clearly be meaningless absent any enforcement mechanism. Presumably the Tribal Council in adopting HTO 21, specifically § 1.8.1(e) and § 1.9.3(c), did not intend to vest Hopi Courts with the power to control the conduct of advocates without the ability to enforce such authority. Therefore, based on the foregoing, this Court reiterates its ruling in Sekayumptewa II and holds that the Trial Court has the authority to regulate the practice of law, including the authority to admit members to practice and discipline members.
B. Trial Court Did Not Overstep Its Authority
Petitioner argues that his substantive and procedural rights to due process under the U.S. and Hopi constitutions and the Indian Civil Rights Act were violated by the Trial Court’s overstepping its authority in the absence of procedures for investigating, prosecuting and deciding ethical complaints.
1. Substantive Due Process
According to Petitioner, suspension from the practice of law is a deprivation of substantive due process because it interferes with one’s right to earn a living thus affecting one’s right to acquire property and one’s freedom of association. He provides no legal authority for this proposition. This Court has recognized that “admission to the Bar is ‘a privilege burdened with conditions’ ” Sekayumptwa II at 2 (quoting Theard v. U.S., 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957)). Thus, Hopi Bar members have no substantive due process right to practice law. Instead, members are entitled to procedural due process when their privilege to practice has been revoked. Therefore, Petitioner’s argument lacks merit.
2. Procedural Due Process
Petitioner asserts that the absence of rules or procedures in disciplinary proceedings deprives one of procedural due process and that the Trial Court overstepped its authority by disciplining him absent due process. Specifically, he cites several examples of procedural defects in the disciplinary proceeding against him. These alleged defects are 1) not receiving a copy of the record referred to in the ethical complaint, which subsequently denied Petitioner the right to explore any facts that could exonerate him; 2) the Chief Judge’s failure to consider the fact that Petitioner’s client (Tewawina) didn’t file a complaint against him, depriving him of the right to subpoena witnesses; and 3) the Chief Judge’s failure to admit evidence introduced by Petitioner regarding Judge Leslie’s credibility in filing the original complaint. Petitioner also argues that he was denied the opportunity to mitigate his punishment.
This Court held in Sekayumptwa II that due process of law is required “in the disciplining of attorneys and lay advocates practicing before the Hopi Courts.” Id. Process is sufficient where a member of the Bar is granted a hearing, in other words, is provided notice and an opportu *229 nity to be heard. Id. at 3. Where a member has conditions imposed on his reinstatement to the Bar without receiving a hearing, due process is not satisfied. Id. Although the suspension in Sekayuptewa II was issued in a contempt context, Petitioner offers no reason why due process should differ for the same type of sanction in a disciplinary context.
The ethical complaint was filed on May 29, 2003. RP at 2. The Chief Judge provided Petitioner with notice of the complaint on June 23, 2003. Id. In response to the notice, Petitioner requested on July 7, 2003 a complete record of the Tewawina and MNC actions. Id. On November 7, 2003 the Chief Judge provided Petitioner with notice of the hearing, but did not provide him with copies of the record. Id. Instead, the Chief Judge gave him explicit permission to access the records at the courthouse. Id. at 3. The hearing on the complaint was held on December 5, 2003 before the Chief Judge. Id. Petitioner appeared at the hearing, which lasted approximately four (4) hours, and provided sworn testimony in response to and in defense of the complaint. Id. The Chief Judge issued a written order on December 29, 2003 ordering Petitioner to pay court costs in the amount of $25.00 and suspending him from the practice of law for six months, with reinstatement conditioned on his completion of an Arizona State Bar Course on Professionalism. PE at 7. Unlike in Sekayurnptiva II, the Chief Judge here issued his order after a full hearing on the merits. Because the records were made available to Petitioner, his argument that the court’s failure in providing him with a complete record amounted to a violation of due process is without merit. Petitioner was provided notice, given full access to the record, and granted a hearing before a disinterested judge where he defended himself against the complaint. Therefore, Petitioner was afforded all the process he was due under Sekayumptewa II.
The Trial Court also followed the ABA Standards for Imposing Lawyer Sanctions (ABA Standards) when imposing the six-month suspension. OA March 18, 2004. It is a set of model standards established by the ABA’s Joint Committee on Professional Sanctions and used by numerous jurisdictions to guide the operation of their lawyer discipline systems. It requires a court to consider each of the following factors when determining lawyer sanctions: (1) the ethical duty violated, (2) the lawyer’s mental state, (3) the actual or potential injury caused by the lawyer’s misconduct, and (4) the existence of aggravating or mitigating factors.[14]
ABA Standard 4.3 defines the appropriateness of different types of sanctions in cases involving conflicts of interest. Standard 4.32 identifies suspension as an appropriate sanction “when a lawyer knows or should know that the interests of a client are materially adverse to the interests of a former client in a substantially related matter, and causes injury or potential injury to the former or the subsequent client.” The commentary to Standard 4.32 cites In re Odendahl, M.R. 2787 (Ill.1982) as an example of an appropriate suspension in this context. This case involved a *230 lawyer who represented a wife to obtain a divorce and then later represented her husband in a petition to reduce her alimony. The court noted that a motion to disqualify was filed against the lawyer and that the lawyer knew or should have known of the impropriety of his conduct.
Petitioner claims it was improper for the Trial Court not to consider the fact that Tewawina did not file a complaint against him. As a corollary, Petitioner also claims he was unable to subpoena witnesses on his behalf. The Trial Court consulted the Standards, which disregards the failure of the injured client to complain as either an aggravating or mitigating factor. Therefore, it was proper for the Trial Court not to consider the lack of a client complaint against Petitioner. The Chief Judge contends that Petitioner was not barred from subpoenaing witnesses, and Petitioner never attempted to do so. OA March 18, 2004. Given Petitioner’s extensive history as a Hopi legal practitioner, Petitioner should have known that he had the right to subpoena witnesses. His failure to even attempt to do so thus renders his argument waived.
Another procedural defect Petitioner cites is the Trial Court’s failure to admit evidence regarding Judge Leslie’s credibility in filing the original complaint.[15] The Chief Judge contends that such evidence was irrelevant and therefore inadmissible. Judge Leslie had an ethical obligation to report Petitioner’s misconduct to the appropriate disciplinary agency under Canon 3(D)(2) of the ABA Model Code of Judicial Conduct (“A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the ABA MRPC should take appropriate action.”).[16] Indeed, the Preface to the ABA Standards indicates “failure to render such reports is a disservice to the public and the legal profession” and that judges in particular should be reminded of their obligation to report unethical conduct. Judge Leslie presided over the January 30, 2003 status review hearing where the Hopi Presenting Officer moved to disqualify Petitioner on grounds of conflict of interest. As such, Judge Leslie received information that indicated a substantial likelihood that Petitioner violated the ABA MRPC. Because of Judge Leslie’s own ethical duty to report misconduct, the Trial Court’s ruling on the admissibility of the evidence was not erroneous.
Finally, Petitioner argues he was denied the opportunity to mitigate his discipline. Under the ABA Standards, the last factor in the calculus for imposing sanctions is the existence of mitigating or aggravating factors. The Chief Judge *231 contends that he would have imposed a more lenient sanction if Petitioner had demonstrated remorse for his conduct. Standard 9.2 and 9.3 allow courts the discretion to consider certain mitigating and aggravating factors to justify a reduction or increase in the degree of the discipline to be imposed. Remorse is a mitigating factor while the refusal to acknowledge the wrongful nature of the conduct is an aggravating factor. To date, Petitioner has not acknowledged the conflict of interest arising from simultaneous representation of opposing parties. He continues to argue that there was no conflict because custody arrangements for the children were already established among the family members.[17] He claims he offered mitigating factors, which the Trial Court rejected. Such factors were that no harm resulted since his clients did not complain and that the children were not taken out of custody. Despite Petitioner’s inconsistency,[18] the failure of the client to complain cannot be used as either a mitigating or aggravating factor. Although there may have been no actual harm, his misconduct posed a potential for harm just as in In re Odendahl, which is sufficient for courts to weigh in determining the appropriate sanction. Considering a lenient sanction if Petitioner displayed remorse suggests that the Trial Court did in fact consider mitigating factors. Therefore, Petitioner was not denied the opportunity to mitigate his discipline.

ORDER OF THE COURT

For the foregoing reasons, we hereby affirm the December 29, 2003 Order of the Trial Court suspending Petitioner from the practice of law.
IT IS SO ORDERED.

. Neither action is currently pending. Oral Argument (OA) March 10, 2004. None of Petitioner’s clients filed ethical complaints against Petitioner. Petitioner’s Supporting Memo at 14.

. Appellate Court Order #01-13-95-2 authorizes a single justice of the Appellate Court to grant extraordinary writs under such circumstances where a matter must be heard on short notice, where time is of the essence and where the full appellate panel is unavailable *223 to appear in person at Keams Canyon. Judicial Administrative Order No.2003-#01 appointed Patricia Sekaquaptewa as Judge Pro Tern for the Hopi Appellate Court until August 31, 2004 to perform the duties of hearing Special Writs and to fill the position where a judge recuses from a matter. Taken together, these orders vested Judge Sekaquaptewa with the authority to preside over the March 10, 2004 hearing.

. The hearing was scheduled for March 18, 2004.

. The Chief Judge's answer was due March 16, 2004 and Petitioner’s response was due March 17, 2004.

. See In the Matter of Sekayumptewa et al., Case #Not Assigned (1997) [hereinafter Sek-ayumptewa I ], In the Matter of Sekayumptewa, 00AP000005 (2000) [hereinafter Sekayumptewa II], In the Matter of D. Jeffrey Porturica, 03AP000004, 4 Am. Tribal Law 447, 2003 WL 25803788 (2003), and In the Matter of Practice of Law, Certified Question of Law # 03AC000005 (2003).

. See Sekayumptewa I & II.

. For example, where a suspension is for three months (May-July).

. Petitioner requested a stay pending the petition for extraordinary writ from the Appellate Court; the stay was granted effective until April 9, 2004, the last day of the Appellate Court’s Spring Session.

.Petitioner's failure to cite HIRCCP 35(a)(2) as a ground is not fatal. The Court may construe the petition as it sees fit in accordance with HIRCCP 1(b). Home, at — Am. Tribal Law at --, 1998 WL 35281675, *1.

. Ariz.Rev.Stat, § 12-2001, Cal. Civ. Proc. §§ 1068. In Arizona, the writ of certiorari is now combined in Special Action rules.

. ‘‘The Appellate and Trial courts shall have the following power ... to control in furtherance of justice the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

. “Officers of the Tribal Court include ... attorneys who are members of the Bar of the Hopi Tribe.”

. Arizona and the ABA Model Rules of Lawyer Disciplinary Enforcement define disciplinary proceedings as sui generis ("of its own kind”).

. Standard 9.2 permits courts to consider the following aggravating factors, among others: refusal to acknowledge wrongful nature of conduct and substantial experience in the practice of law. Mitigating factors that courts may consider include absence of a prior disciplinary record, timely good faith effort to rectify consequences of misconduct, character or reputation, and remorse. Standard 9.3. Standard 9.4 provides that the failure of the injured client to complain is a factor that should not be considered as either aggravating or mitigating.

. Petitioner alleges that Judge Leslie was motivated to file the ethical complaint by his long history of animosity toward Petitioner, stemming from Petitioner's exposure of Judge Leslie’s conviction of a violent crime. PSM at 14 and PE #2.

. Petitioner raises a consistency argument under the rubric of mitigation. Petitioner argues Judge Leslie was inconsistent in fulfilling his ethical duty since he did not report an alleged misconduct of another lay advocate, and therefore his inconsistency should act as a mitigating factor in Petitioner’s discipline. Certainly, jurisdictions should strive for consistency and proportionality in imposing lawyer sanctions. Otherwise, the goals of lawyer discipline are undermined. However, whether to report an alleged misconduct is an individual choice driven largely by whether the facts support a substantial likelihood that there has been an ethical violation. Moreover, the misconduct of another practitioner and whether a judge reports it does not obviate Petitioner’s ethical duty to his clients. It would be improper for any court to even speculate on the merits of another practitioner’s misconduct absent a forma! complaint. Therefore, Judge Leslie's act in not reporting the alleged misconduct of another does not mitigate the degree of Petitioner's discipline.

. Petitioner's act of withdrawing as counsel from one party, and ultimately both parties, undercuts his position.

. In his brief, Petitioner contends he was denied the opportunity to mitigate his discipline, yet at the hearing submitted to the Court that he offered mitigating factors in the proceeding below which the Trial Court did not consider.